Mary Frances **STROMAN**

v.

A. W. **McCANLESS, District Director, Dallas District, Internal Revenue Service.**

No. CA 3-75-0328-C.

United States District Court, N. D. Texas, Dallas Division. April 14, 1975.

Christopher M. Weil and James R. Craig, Weil, Craig, & Fischman, Dallas, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., and Roger J. Allen, Asst. U. S. Atty., Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

The plaintiff, Mrs. Mary Frances Stroman, requests the Court to enjoin the Internal Revenue Service, both preliminarily and permanently, from foreclosing upon her homestead property in an attempt to satisfy an unpaid tax bill of $8,222.92.

The Court finds initially that it has jurisdiction of the subject matter in this civil action, arising under certain statutory provisions of the Internal Revenue Code, by virtue of 28 U.S.C. § 1340.[1]

### I. STATEMENT OF FACTS

Mrs. Stroman was married to Mr. Stroman until 1971, when the two separated and were divorced. For the three years prior to their divorce—1968, 1969, and 1970—Mr. and Mrs. Stroman chose to file a joint income tax return. Thereafter, both of the Stromans filed independent tax returns.

The tax liability out of which this law suit developed resulted from a 1972 audit the I.R.S. performed on the 1968, 1969 and 1970 income tax returns filed by the Stromans. Originally, the I.R.S. determined that the Stromans were jointly liable for an aggregate net deficiency of $34,112.74. Informed on January 12,

---

1. 28 U.S.C. § 1340 provides that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, except matters within the jurisdiction of the Customs Court.

1973, of this fact in what is known in tax vernacular as a "30-day letter", the Stromans responded with a timely protest. After several district audit level conferences, the I.R.S. proposed an amended deficient amount of $17,133.57, and so informed the plaintiff and her former husband under cover letter dated August 28, 1973.

Not being satisfied with this determination, the Stromans asked for an Appellate audit hearing of the matter. Mr. Cummins, an Appellate conferee, proposed a final deficiency amount of $8,-222.92 by letter dated October 5, 1973. Once again, this lower proposal resulted from the negotiations connected with additional conferences.

That deficiency proposal met with the Stromans' approval. As a consequence, the I.R.S. wished to "close" the case for their records by having both Stromans sign a Form 870–AD. In this way, the I.R.S. expected that the dispute arising out of the Stromans' 1968, 1969 and 1970 tax returns would be completely resolved.

■ Normally, a taxpayer's signature on a Form 870–AD signifies his or her *waiver* of their right under Section 6213 (a) to contest the tax deficiency, its validity, assessment and collection by filing in the Tax Court for a redetermination.[2] However, the taxpayer does not have an *absolute* right to ask for a redetermination or a review of the deficiency before the Tax Court. That right only vests if the taxpayer files a petition of review in the Tax Court within 90 days after receiving a notice of deficiency, as provided for in Section 6212. The notice of deficiency, the so-called 90-day letter, is commonly referred to as a "ticket to the Tax Court", because without it jurisdiction does not vest. *See*, Mertens, Law of Federal Income Taxation, Vol. 9, Section 49.131, *also*, Thornton D. Wilt v. Commissioner of Internal Revenue Service, 60 T.C. 977 (1973).

If the taxpayer does not file before the Tax Court within the prescribed 90-day period, then he or she has an alternative route by which a redetermination of the I.R.S. computed deficiency amount can be made. That route is the refund approach, wherein the taxpayer chooses to pay the assessed deficiency and then sue for its refund in Federal District Court.[3]

Depending upon the taxpayer's unique situation, several tactical advantages can exist for going either of the two ways— to the Tax Court or to the U.S. District Courts. With the latter move, the taxpayer achieves the advantage of arguing his case before either a jury of individuals, presumably non-experts in tax matters, or before a federal judge[4] who has not become "biased" one way or the other through years of continuous contact with tax issues. The one disadvantage with this latter choice is the

2. The Form 870–AD includes the following relevant provisions, written in the nature of an offer and acceptance by the I.R.S., with the taxpayer's signature constituting the offer and the I.R.S.'s acquiescence as the acceptance:

"Pursuant to the provisions of Section 6213 (a) of the Internal Revenue Code of 1954, or corresponding provisions of prior Internal Revenue Laws, the undersigned offers to waive the restrictions provided in section 6213(a) of the Internal Revenue Code of 1954, or . . . . and to consent to the assessment and collection of the following deficiencies with interest as provided by law. The undersigned offers also to accept the following overassessments as correct.

"This offer is subject to acceptance for the Commissioner of Internal Revenue. It shall take effect as a waiver of restrictions on the date it is accepted. Unless and until it is accepted, it shall have no force or effect."

3. Actually, Section 7422(a) requires a taxpayer to first make a refund claim to the Secretary of the Treasury (I.R.S.) and have that claim denied before a civil action for refund will lie in U. S. District Courts. Section 6532 provides the applicable statute of limitations for such a civil suit.

4. See the Seventh Amendment to the Constitution and Federal Rule of Civil Procedure 38(a) as to the right of a jury trial and Federal Rule of Civil Procedure 52(a) about non-jury cases.

required prepayment of the allegedly owed deficient amount of tax. That problem presents itself in this case, since the taxpayer plaintiff apparently supports herself and has little assets other than her homestead.

In spite of these "advantages", whether real or illusory, many taxpayers elect to have their deficiency reviewed by the Tax Court. The distinct advantage to this course of action lies in the fact that no payment of the tax deficiency is required before jurisdiction vests in the Tax Court. Of course, jurisdiction before the Tax Court does not vest for any taxpayer who fails to file his claim within 90 days after receiving his or her "notice of deficiency".

The plaintiff in this case never received the "notice of deficiency" letter. She correspondingly claims that she is entitled to receive it, in order that she may choose between paying the alleged deficiency and suing for its refund in the District Court[5] or proceeding directly to the Tax Court.

The Internal Revenue Service, on the other hand, contends that the plaintiff, by signing the Form 870–AD, relinquished or waived the right to either receive the 90-day letter or contest the deficiency, assessment and collection before the Tax Court.

Principally, the above dispute centers about what effect this Court should give the conditional signature made by Mrs. Stroman upon the Form 870–AD. Although both Mr. and Mrs. Stroman agreed to recognize their joint liability for the $8,222.92 of income omitted from their 1968, 1969 and 1970 returns, Mrs. Stroman nevertheless signed Form 870–AD upon the condition that she did not waive her *own* rights under Section 6013 (e) or other Code provisions, to contest collection of the deficiency as an "innocent spouse". Her attorney communicated this fact by cover letter dated November 13, 1974, which included the disputed Form 870–AD and the following notation made by the plaintiff upon it:

Note: Execution of this form by Mrs. Mary Frances Stroman is not intended by her to be a waiver of any rights under 6013(e) or other provisions of law to contest collection against her as innocent spouse.

Under Section 6013 of the I.R.C., married taxpayers who choose to accept the benefits of filing a joint tax return are in turn jointly and severally liable for the tax due on their combined incomes. Congress became aware of numerous instances where grave injustice resulted to one spouse due to the imposition of this joint liability where the other spouse who filed the joint return illegally omitted income from a certain year's return. Because the non-filing spouse often had no knowledge of her husband's (wife's) activities and the resulting omission, and even though she did not benefit in any way from the use of the funds, she could still be held responsible under the joint liability provisions of Section 6013. To remedy this situation, Congress enacted the "innocent spouse defense" exception to the general rule of joint liability. In general, an "innocent spouse" will be relieved of liability for deficient tax amounts, including interests and penalties, if he or she establishes that the omitted portion of income from the joint return exceeded 25 percent of the amount reported, that the omitted portion was attributable to such person's income, that he or she did not know nor had reason to know of the omission, and that it would be inequitable to hold the taxpayer liable for the deficiency. *See*, Tres.Reg. § 1. 6013–5; *also*, Sanders v. United States, 509 F.2d 162 (5th Cir., decided March 7, 1975). United States Code Congressional and Administrative News, Legislative History, Pub.L. 91–679, Sen.Rep.No. 91–1537, § 3 (1970), p. 6089.

Mrs. Stroman essentially contends that in her many district and appellate level audit conferences with the I.R.S. during

5. Assuming for the sake of explanation that the Commissioner denied her refund claim.

1974 and even into early 1975, she advanced her position as an "innocent spouse". It appears from the evidence of inter-party correspondence in this case that Mrs. Stroman always believed and had sufficient justification to believe that Mr. Stroman intended to pay the tax liability. However, in the event he failed with this purpose, Mrs. Stroman attempted to retain her "innocent spouse defense" by conditionally signing the Form 870–AD. From the hearing, the Court believes the plaintiff and her attorney when they state that the Appellate I.R.S. conferee expressed the opinion that Mrs. Stroman's "innocent spouse defense" would not be prejudiced by her signing the Form 870–AD. That understanding continued into January, 1975, when Mr. Craig, acting as Mrs. Stroman's attorney, discussed the subject over the phone and in subsequent letters to I.R.S. conferees. For example, in one letter Mr. Craig asserted that Mrs. Stroman was entitled to the "innocent spouse defense" due in part to the complex circumstances surrounding Mr. Stroman's business decline in the late sixties, about which the plaintiff knew almost nothing. Although the Service apparently questioned whether or not Mrs. Stroman could claim the "innocent spouse defense" in conference-type proceedings, it nevertheless recognized the occasion in a letter written by Mr. J. L. Finch, Chief of the Appellate Audit Office, Dallas, Texas, on February 20, 1975, wherein he advised Mr. Craig of the Service's willingness to consider the "defense" if acceptable information supporting the plaintiff's position were furnished.

Whether internal communications were crossed up is unknown, but in any event, the I.R.S. collection office notified Mrs. Stroman late last year that her homestead would be levied upon if the assessed tax deficiency remained unpaid. After the Service issued a formal "notice of seizure and levy" on February 19, 1975, Mr. Craig wrote the I.R.S. advising that Mrs. Stroman had asked for and been denied a full review of her "innocent spouse" claim and that the assessment, levy and seizure were therefore invalid. He also requested an administrative re-opening of the matter. No such event occurred and the Service forged ahead with its plans of foreclosure, thereby requiring the plaintiff to file a request for temporary and permanent injunctive relief.

To summarize the facts somewhat, the Court finds that ever since Mrs. Stroman was notified in August, 1974, by a "30-day letter" of the potential deficiency she and her former husband owed on their 1968, 1969 and 1970 tax years, she has confronted the Service with her position as an "innocent spouse". Even upon agreeing to the proposed deficient amount of $8,222.92 in Form 870–AD, Mrs. Stroman inserted a provision reminding the Service of the defense she relied upon. In light of these circumstances, the question presented is simply one of whether or not the I.R.S. is bound to recognize the "condition" Mrs. Stroman inserted in the Form 870–AD. To put it another way, is the I.R.S. bound by its acceptance of the Form 870–AD and Mrs. Stroman's conditional statement? The Court thinks that the answer is yes and that Mrs. Stroman must be given the opportunity to choose between having her "innocent spouse defense" heard by the Tax Court or by a U.S. Federal District Court.

## LEGAL ASPECTS

As noted above, the plaintiff herein seeks preliminary and permanent injunctive relief against the defendant. In tax related disputes, any such plaintiff must carry two burdens: first, a statutory one dealing with the anti-injunction provisions of I.R.C. 7421 and, second, the court-made requirements necessary for the granting of preliminary injunction under Canal Authority of State of Florida v. Callaway, 489 F.2d 567 (5th Cir. 1974).

I.R.C. Section 7421 prohibits a U.S. District Court from enjoining or restraining the assessment or collection of any tax liability unless one of the

statutory exemptions is met. Sections 6212(a) and 6213(a) both represent exceptions to the general anti-injunction rule. The two sections complement each other. Section 6212(a) permits an exception where the Service has determined that a taxpayer is deficient in his income tax and has sent him or her a "notice of deficiency". Section 6213(a) also provides an exception to the anti-injunction prohibition whenever a taxpayer who has received a notice of deficiency files a petition for a redetermination before the Tax Court within 90 days thereafter. Because the Service was unwilling to accept Mrs. Stroman's position that she was entitled to assert her "innocent spouse" defense against any assessment or collection process if Mr. Stroman failed to pay the deficiency, the Court believes that she is entitled to receive a "notice of deficiency" and thereby achieve the opportunity of filing before the Tax Court. As such, the statutory prohibition against injunctions against collection of deficient taxes is excepted to.

Insofar as the four requirements needed to grant a preliminary injunction are concerned, the Court also finds each one present in the instant case. Considering her financial position, it is no doubt true that Mrs. Stroman would suffer irreparable harm if her homestead were lost by the Service's foreclosure. As for the equities and hardships involved, it is quite clear that only the plaintiff has anything substantial to lose by reason of this Court not enjoining foreclosure upon her homestead. Insofar as the Service is concerned, the Court simply does not feel that granting the injunctive relief will impose any harm upon the I.R.S. caused by any time delay necessary to allow the plaintiff to litigate her "innocent spouse theory". Because the parties agreed at the end of the preliminary injunction hearing that no other evidence would be introduced at a full hearing on the merits, the Court

finds that the "substantial likelihood of success" requirement for a preliminary injunction is mooted since the Court announces that it also permanently enjoins the I.R.S. from foreclosing upon Mrs. Stroman's homestead until she has first received her "notice of deficiency".

The substance of what the Court holds today addresses the equities of this situation where a taxpayer faces the Internal Revenue Service with a legal position which remains constant over a complete history of communications, negotiations and conferences with its officials. The plaintiff's theory with regard to the "innocent spouse defense" was made time and again to the I.R.S., starting with the initial protest Mr. and Mrs. Stroman filed in response to the $34,000 deficiency amount, and ending with the filing of this law suit. The I.R.S. can claim no surprise. There was none. It knew all along what Mrs. Stroman's position and expectations were concerning the tax liability. She fully expected Mr. Stroman to pay off the tax that both he and Mrs. Stroman owed. In the event he failed to live up to his intention, then Mrs. Stroman relied upon her ability to fall back upon her spousal defense.

Her conditional signature of the Form 870–AD created nothing new; it only reinforced her position. The Service officials tried to argue that anyone's signing a Form 870–AD acts to close the case automatically, thereby foreclosing the taxpayer's rights to assert any defenses under the other statutory provisions. The simple response to that assertion is that the I.R.S. cannot hide behind a series of documents that normally means only one thing to it, but may because of amendments mean something entirely different to taxpayers.

The "condition" inserted by Mrs. Stroman in signing her Form 870–AD was obviously meant to mean something, and assuming the I.R.S. accepted it, an assumption fully supported by the evidence,[6] then it must be enforced in the

---

6. The conduct of the I.R.S. in assessing, and then attempting to foreclose upon the plain-

tiff's homestead in order to collect the assessment, clearly indicates its acceptance of the

same manner as any other contract. The position this Court takes in that Form 870–AD together with Mrs. Stroman's express condition is to be treated like a contract is not new. In Quigley v. IRS, 110 U.S.App.D.C. 137, 289 F.2d 878 (1960), the D.C.Circuit Court of Appeals held that a taxpayer who signed a Form 870–AD, thinking that in fact he had signed a Form 872–AD, made a unilateral mistake, which under general principles of contract law, the court would have to enforce against him in the absence of a showing of fraud or duress on the part of the government. Under the majority view of contract law, in order to nullify a contract by reason of a mistake, both sides must be mistaken as to some material aspect of the contract. One side's mistake, without the other side's intentionally trying to take unfair advantage of it, will normally not void a contract.[7]

In the instant case, neither side made a mistake and neither side was surprised by Mrs. Stroman's conditional statement on the Form 870–AD. If the plaintiff had not inserted this provision, then she would have waived all her rights to contest assessment and collection of the taxes that she and her husband both owed. *See,* Kalil v. Enochs, 295 F.2d 467 (5th Cir. 1971).

But such is not the case today. If the I.R.S. with all of its technical expertise at its instant disposal agrees to something then it should be bound, unless extenuating circumstances provide good reason to do otherwise. Since the plaintiff's good faith has never been questioned, the Court cannot begin to find the existence of any such extenuating circumstances.

The plaintiff's attorney is requested to prepare and submit the appropriate order for a preliminary and permanent injunction to the Court.

Form 870–AD. The fact that it refused to acknowledge Mrs. Stroman's conditional signature does not change the Court's conclusion. The effect of the condition and not the

acceptance of Form 870–AD is what is at issue here.

7. Restatement (1st) of Contracts, §§ 501–505.